[Civ. No. 18639. Third Dist. Mar. 31, 1981.]

ANN O. HATTREM HILL, Plaintiff and Respondent, v.
DONALD WILLIAM HATTREM, SR., Defendant and Appellant.

**COUNSEL**

Neil R. McAllister, Jr., for Defendant and Appellant.

Robert W. Fisher for Plaintiff and Respondent.

**OPINION**

**REYNOSO, Acting P. J.**—Defendant Donald Hattrem appeals from the final judgment entered in April 1979 which awarded plaintiff Ann Hill (formerly Ann Hattrem) a 32.92 percent interest in his military pension. The trial court properly found that the pension, which was not adjudicated in the original divorce proceeding in 1964, is community property subject to division by the court. Since the pension is community property we hold that the wife may recover, as a matter of law, that portion payable after her husband received notice of her claim; as to the portion paid after the divorce decree but before notice, we hold that equitable defenses may be considered by the trial court in determining the recovery. We reverse and remand.

I

There is no substantial disagreement on the facts. Donald Hattrem entered the Oregon National Guard in 1939; the guard was federalized in 1940. He then enlisted in the United States Armed Services, and was stationed in Reno, Nevada for five years, during which time he married Ann. Thereafter, over the next twenty years of service he was stationed in six different states, including two separate tours in California, until 1960 when he retired as a major from the Air Force in Illinois. In January 1961, Donald and Ann moved to California. Two years later, in

January 1963, they separated. In April 1964, Ann filed a complaint for separate maintenance in the Superior Court of Sacramento County and Donald cross-complained for divorce. An interlocutory divorce decree was granted in June 1964, and final judgment was entered in July 1967. At the time of the divorce proceedings, both parties knew that Donald was receiving vested retirement pay from the United States Air Force in the amount of $318.96 per month. Its status as either community property or separate property was not an issue adjudicated by the court.

Ten years later, in March 1974,[1] Ann discovered that she may have been entitled to an interest in Donald's military pension and in June 1974, she filed a notice of motion to modify the interlocutory and final judgments. The motion was heard and denied in August 1974. Ann did not appeal that decision.

The following year, in January 1975, Ann filed this action. After several amendments, Ann's cause against Donald was heard in 1978. Donald's military payroll record from the United States Air Force from January 1, 1961 (the date of his retirement), through March 1, 1978, was received into evidence. The court took judicial notice of the entire record of the earlier Sacramento Superior Court case filed in the divorce proceeding between the parties. Ann and Donald testified; most of their testimony related to the dates of marriage and separation and the dates and places of military service. Both parties acknowledged the existence of the military retirement pay. There is no testimony regarding the disposal of the pension by Donald after the separation and divorce. The parties seem to agree that the issue the court should decide was whether the pension was community property and the amount due, if any.

The court ruled that it was bound by *In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449], and *Lewis v. Superior Court* (1978) 77 Cal.App.3d 844 [144 Cal.Rptr. 1], which declared military pensions community property to the extent earned during the marriage. Based on defendant's military records, the court computed the community property interest in the pension to be 65.84 percent, and Ann's half-interest to be 32.92 percent. Accordingly, it

---

[1]Presumably, this discovery was made after the California Supreme Court decided that military pensions are community property in this state. (*In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449].)

ordered Donald to pay Ann the sum of $7,903.40 plus interest.[2] That backpay represented her share owing through July 1978. It further ordered Donald to make a direct allotment to Ann for a 32.92 percent share of all future pension payments.

■ On appeal, Donald asserts that the judgment must be reversed on the grounds of res judicata, estoppel, and federal supremacy. Alternatively, he argues that California's community property laws do not apply to a military pension which was earned during service in noncommunity property states.

## II

The argument which Donald presents was recently rejected by the California Supreme Court which considered a factual situation almost identical to the one before us. (*Henn* v. *Henn* (1980) 26 Cal.3d 323 [161 Cal.Rptr. 502, 605 P.2d 10].) The cause in *Henn* was remanded to the trial court for a determination on the merits. There, the trial court had entered summary judgment for the defendant husband. In the case at bench, a trial was held and a decision rendered in favor of the former wife, based substantially on the grounds discussed in *Henn*, although the trial court determination predates that decision.

While the *Henn* court determined that military pensions are community property, it left open the recovery of pension payments already made. The court observed: "If Helen is allowed to recover her share of the pension payments received by Henry between 1971 and the initiation of the present action, a problem may arise. It may be substantially more burdensome for Henry to account for the pension payments he has received since the 1971 division of community assets than it would have been for him to have complied with a partition effected at that time. Henry is likely to have treated the asset as his separate property and disposed of it according to his needs. The court is confident that this problem may be adequately addressed under the defense of laches." (26 Cal.3d at pp. 332-333.)

■ ■ ■■■ Laches does not resolve the issue at hand, for Ann acted promptly.[3] ■ Further, "[d]elay in reliance on legal

---

[2]This represented the principal sum of $27,903.40 less a $20,000 settlement from her former attorney, who had been joined but settled early in the litigation.

[3]Laches is the application of the legal maxim "equity aids the vigilant." (See Civ. Code, § 3527.) However, the defense of laches requires both inexcusable delay on the

advice, awaiting determination of a legal issue in another pending case, may be excusable." (7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 15, p. 5241; *Hopson v. Nat. Union etc. Cooks, Stewards* (1953) 116 Cal.App.2d 320, 325-326 [253 P.2d 733].) Nonetheless, we believe the teaching of *Henn* is that the trial court should apply equitable principles in the division of the military retirement recently declared to be community property. In discussing application of laches, the *Henn* court noted: "The exercise of a court's authority to so limit *equitable relief* will provide litigants with an additional incentive to assert *all tenable community property rights* in assets known to exist at the time of the initial judicial distribution of the marital community." (*Henn, supra,* 26 Cal.3d at p. 333; italics added.)

██ Although we have determined the defense of laches to be inappropriate in this matter, we believe that a trial court is authorized to grant "equitable relief" in determining the division of previously paid retirement benefits. Estoppel and due process grounds may be considered by the trial court. We note these principles may be relevant due to the potential hardship and unfairness of result in this case involving litigation of newly discovered rights when substantial reliance may have been placed upon previous law. Cases addressing the problem of awarding past benefits to spouses, decided subsequent to *Henn,* have remanded the matter to the trial court to permit the parties to present extrinsic evidence bearing on the application of equitable defenses to such an award. (*In re Marriage of Milhan* (1980) 27 Cal.3d 765 [166 Cal.Rptr. 533, 613 P.2d 812]; *In re Marriage of Snyder* (1979) 95 Cal.App.3d 636, 639 [157 Cal.Rptr. 196]; *In re Marriage of Davis* (1980) 113 Cal.App.3d 485 [169 Cal.Rptr. 863].)

The unjust distribution of property engendered by the previous *practice* of considering military retirement pay the husband's separate

part of the plaintiff (*Kleinclaus v. Dutard* (1905) 147 Cal. 245 [81 P. 516]), and prejudice to the defendant (*Wolpert v. Gripton* (1931) 213 Cal. 474, 483 [2 P.2d 767]). Laches does not adequately address the problem before us because, although plaintiff's delay may have resulted in prejudice to the defendant inasmuch as he in good faith may have expended community funds, we cannot say, as a matter of law that in the case before us plaintiff's delay was unreasonable or inexcusable. Laches implies that the plaintiff should have done something earlier. In this case, she acted as quickly as she could have under the circumstances. The decision in *Fithian* was filed in March 1974. She immediately contacted an attorney, and that same month, filed a motion in the dissolution action to have the status of the pension adjudicated. When that motion was denied, she filed a separate action, the one herein. She was as diligent in pursuing her claim as she could have been. We agree with the trial court's finding that the defense of laches does not here apply.

property, should not be perpetuated by denial of full retroactive effect of the *Fithian* ruling to the extent that rule was intended by the California Supreme Court to be retrospective.

On remand, it is incumbent upon Donald to present extrinsic evidence to the trial court of any inequities that may follow in restoring to Ann the full amount of her community share in the retirement benefits received to date, determined by the lower court to be 32.92 percent. This same issue was raised in *In re Marriage of Milhan, supra*, 27 Cal.3d 765, at page 778 where the trial court made a decision awarding the former wife full restitution of her community share of the retirement pay her husband had received. It also included an award of attorney fees and interest on the retirement benefits at the legal rate of interest. In upholding the judgment and award, the Supreme Court remarked: "Though restitution may be denied where necessary to avoid inequity [citations], the record does not show that the trial court abused its discretion in granting restitution in this case." (*Id.*, at p. 778.) Further, the award of attorney fees was ruled to be a matter within the trial court's discretion which could not be disturbed absent a showing of abuse of that discretion. The Supreme Court then declared that the former wife was also entitled to her share of retirement benefits paid between the year of dissolution (1970) and the time the property division was made (1972) unless the husband could raise valid equitable defenses or show reasons why such a restitution should not be made. (*Id.*, at pp. 779-780.) Donald may wish to show what disposition was made of the retirement pay he has received from the date of the divorce as evidence that it would be unjust for him to suddenly be required to tender to Ann a sum equal to almost one-third of that amount. (See *In re Marriage of Davis* (1980) 113 Cal.App.3d 485, 488 [169 Cal.Rptr. 863].)

Should the trial court determine that no unjust or harsh result would result in awarding Ann full restitution of her share of the retirement pay, the court is fully empowered to tailor the form of that award so as to avoid placing an undue burden on Donald. This may be accomplished by having Donald make monthly payments, as was ordered by the trial court in *In re Marriage of Milhan, supra*, 27 Cal.3d, footnote 1 at page 770, or in any other manner it finds appropriate. And should it find that Donald has presented no viable equitable defenses to awarding Ann restitution of that amount, it may then enforce the prior award.

We reverse and remand to the trial court to make findings in accordance with the principles expressed herein.

Blease, J., and Carr, J., concurred.